{¶ 1} Defendant-appellant, Russell D. Kemp, was indicted by the Franklin County Grand Jury on two separate counts of robbery: one count of robbery in violation of R.C. 2911.02(A)(2), a second-degree felony, and one count of robbery in violation of R.C. 2911.02(A)(3), a third-degree felony. Following a jury trial, defendant was found guilty on both counts of robbery, and, following a pre-sentence investigation, the trial court sentenced defendant to five years of incarceration on the second-degree felony robbery conviction. *Page 2 
 {¶ 2} On appeal, defendant sets forth the following assignment of error:
 The State Failed to Meet its Burden of Proof Beyond a Reasonable Doubt, and the Verdicts were Against the Manifest Weight of the Evidence.
 {¶ 3} According to the testimony at trial, Charmaine Elkins was on her way to the apartment of Florenzia Walker, the paternal grandmother of two of Ms. Elkins' children. Ms. Elkins had worked late at the Confluence Park restaurant. Ms. Elkins stopped at a White Castle for some food. The White Castle was located a short distance from Ms. Walker's apartment. Ms. Elkins was planning to spend the night at Ms. Walker's apartment.
 {¶ 4} While in the drive-through line, defendant approached Ms. Elkins' car and began talking to her. According to Ms. Elkins' testimony, defendant said that he had been drinking and he needed a ride home. Defendant indicated that he was headed to the same apartment complex where Ms. Walker lived. Ms. Elkins testified that she was nervous at first and refused to give defendant a ride. Defendant kept talking to her and ultimately, after getting her food, Ms. Elkins permitted defendant to enter her car.
 {¶ 5} Thereafter, Ms. Elkins drove defendant down the road and across the street to the apartment complex and pulled into a nearby parking space. Ms. Elkins testified that she parked at the front end of the apartment complex, at some distance from Ms. Walker's apartment, so that defendant would not know where she lived. Ms. Elkins also testified that two Columbus Police Department cruisers pulled in behind her and parked a relatively short distance from her car. At this time, Ms. Elkins told defendant to get out of the car. However, defendant kept talking with her. Suddenly, defendant pulled out a silver gun and said "I'll kill you." *Page 3 
Defendant took Ms. Elkins' purse and cell phone, both of which were sitting between them, exited the vehicle and walked away. Ms. Elkins testified that her purse was cream colored and that it contained her work I.D. and approximately three dollars. The police officers who testified later indicated that they were looking for a black purse.
 {¶ 6} Thereafter, Ms. Elkins testified that she flagged down one of the police officers leaving the complex. She informed them that she had been robbed and gave them a description of defendant indicating that he was a black male wearing black clothing. After explaining to the police officers what happened, the cruisers left the area. Ms. Elkins returned to her car and drove to Ms. Walker's apartment. According to Ms. Walker's testimony, Ms. Elkins came into the bedroom shaking so badly that she could hardly talk. After Ms. Elkins explained that she had been robbed, Ms. Walker called 911 to report the robbery. The 911 tape was played for the jury.
 {¶ 7} Shortly thereafter, the police officers returned to Ms. Walker's apartment and Ms. Elkins left with them. The police had apprehended a man and wanted Ms. Elkins to indicate whether or not this was the man who had robbed her. Ms. Elkins testified that she was 100 percent certain that the man the police apprehended was the man who had robbed her that evening. The police recovered Ms. Elkins' cell phone from defendant and, after verifying that it was Ms. Elkins' phone, returned the phone to Ms. Elkins. Although the police searched for the purse, it was not recovered. *Page 4 
 {¶ 8} Officers Wendell Tolber and Derek Corbin also testified. Officer Tolber testified that they had been dispatched to Citizens Place in response to a domestic call. Officer Tolber noted that he had pulled in behind another vehicle and that he had noticed a black male and black female in that car. The officers were soon released from their domestic call. Officer Tolber testified that Ms. Elkins flagged him down as he was leaving and that she was frantic. She gave him a description of the man who had robbed her. Officer Tolber immediately aired the information and began looking for defendant. Defendant was located and stopped by Officer Corbin a short distance from the apartment complex. According to Officer Corbin's testimony, defendant repeatedly refused to take his hands out of his pockets. When he did, the police officer saw defendant throw something into the bushes. The police recovered the object which was a silver and black toy gun. According to Officer Tolber, although it was not a real gun it looked real. Officer Tolber indicated that toy guns generally have an orange tip, which, in this case, had been removed. Defendant did have Ms. Elkins' cell phone, but informed the police that he had borrowed it. Ms. Elkins was brought to the scene and was able to identify defendant as the man who had robbed her. Officer Tolber also testified that the police did not inventory the incoming/outgoing calls on the cell phone, but that, after they determined that it was Ms. Elkins' cell phone, they returned it to her.
 {¶ 9} In his assignment of error, defendant argues that the jury's verdict was not supported by sufficient evidence and that his convictions were against the manifest weight of the evidence. *Page 5 
 {¶ 10} In determining the sufficiency of the evidence, the function of the appellate court is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 11} The standard for determining whether a judgment in a criminal case is against the manifest weight of the evidence has been set forth by the Supreme Court of Ohio in State v. DeHass, 10 Ohio St.2d 230, paragraph two of the syllabus, which states:
 A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by a jury on sufficient evidence and where no prejudicial error occurred in the actual trial of the case or in the instructions given the jury by the court.
 {¶ 12} The test for whether the judgment is against the manifest weight of the evidence is broader than the test for whether there is sufficient evidence to support a conviction. In considering the manifest weight of the evidence, the reviewing court weighs the evidence in a limited sense to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find the defendant guilty beyond a reasonable doubt. The syllabus rule of Jenks, which applies only to review of its sufficiency of the evidence, requires that the evidence be viewed in a light most favorable to the state. By comparison, a review of the *Page 6 
manifest weight of the evidence does not require that the evidence be so viewed, but the ultimate test remains whether the result could reasonably be reached from the evidence. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v.Nicely (1988), 39 Ohio St.3d 147. Under both standards, an appellate court must ordinarily defer to the fact finder's resolution of factual and credibility issues. DeHass, supra.
 {¶ 13} R.C. 2911.02 defines the crime of robbery, in pertinent part, as follows:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 (3) Use or threaten the immediate use of force against another;
 (B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.
 {¶ 14} Considering the sufficiency of the evidence issue, Ms. Elkins testified that defendant pointed what she perceived to be a real gun at her and threatened to kill her. Thereafter, defendant took her purse and cell phone.
 {¶ 15} The use or threat of immediate use of force element of the offense of robbery, as expressed in R.C. 2911.02(A), is satisfied if the fear of the alleged victim was of such a nature as in reason and common sense is likely to induce a *Page 7 
person to part with their property against their will and temporarily suspend their power to exercise their will. State v. Davis (1983),6 Ohio St.3d 91, syllabus. This is an objective, rather than subjective, test and depends on the totality of the circumstances. State v.Habtemariam (1995), 103 Ohio App.3d 425. Further, the fact that the gun used was a toy gun is irrelevant. State v. Brooks, Montgomery App. No. 21531, 2007-Ohio-1029.
 {¶ 16} Viewing the evidence in a light most favorable to the state, this court finds that there was sufficient evidence presented that the defendant attempted to inflict or threatened to inflict physical harm on Ms. Elkins and used or threatened to use the immediate use of force against Ms. Elkins during the course of this theft offense. As such, this court finds that the evidence was sufficient to support the convictions for robbery under the language of the statute.
 {¶ 17} Defendant also contends that his convictions are against the manifest weight of the evidence. Defendant contends that it was unreasonable for the jury to have believed that the state proved its case beyond a reasonable doubt in light of numerous inconsistencies and unexplained gaps in Ms. Elkins' testimony. Defendant points to the following: Ms. Elkins did not recall how late she had worked that night; Ms. Elkins left her window rolled down, talked to defendant, and ultimately invited him into her car; although Ms. Elkins admitted that defendant complimented her eyes, she denied that defendant was flirting with her; Ms. Elkins was unable to describe her conversation with defendant beyond stating that defendant kept asking for a ride and talked about either his wife or girlfriend; there was no reason for Ms. Elkins to drive defendant to the apartment *Page 8 
complex given its close proximity to the White Castle; Ms. Elkins testified that her purse was cream colored while the police officers noted that the purse was black; the purse was never recovered; and Ms. Elkins could not remember if she went downtown to complete a police report.
 {¶ 18} Based upon a review of the record and given that the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide, this court finds that defendant's convictions for robbery could reasonably be reached from the evidence presented at trial. Whether or not Ms. Elkins exercised good judgment in offering defendant a ride to the apartment complex does not prove that defendant could not have threatened her later. Further, whether the purse was cream or black colored and that the police did not find the purse does not necessarily prove that defendant did not take her purse. Ms. Elkins testified that the purse was very small as it only contained her I.D. and a few dollars. Furthermore, when defendant was apprehended, he possessed Ms. Elkins' cell phone. Although he told the police that he had borrowed it, Ms. Elkins told the police and testified that defendant had taken it from her car after pointing what appeared to be a real gun at her and threatening to kill her. This court cannot say that the jury clearly lost its way and created such a manifest miscarriage that the convictions must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 19} For the foregoing reasons, this court finds that there was sufficient evidence to find defendant guilty of robbery, and this court likewise finds his convictions were not against the manifest weight of the evidence. As such, *Page 9 
defendant's sole assignment of error is not well-taken and is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 SADLER, P.J., and BROWN, J., concur. *Page 1